OPINION OF THE COURT
Herman Cahn, J.
Defendants move for an order dismissing the complaint (1) pursuant to CPLR 3211 (a) (2), on the grounds that this court lacks subject matter jurisdiction because plaintiffs’ claims are preempted by the Federal Railway Labor Act (RLA) (45 USC § 151 et seq.); (2) pursuant to CPLR 3211 (a) (5), on the grounds that plaintiffs are barred by laches; (3) pursuant to CPLR 3211 (a) (10), on the grounds that plaintiffs have failed to join all necessary parties; and (4) pursuant to CPLR 3211 (a) (5), on the ground that plaintiffs’ claims for injunctive relief are barred by reason of mootness.
This is an action by plaintiff the International Association of Machinists and Aerospace Workers (IAM) et al. (hereinafter referred to collectively as the Union), representing a substantial number of employees, of defendants Allegis, against Allegis Corporation (Allegis),[1] the parent holding company of defendant United Air Lines, Inc. (United) et al. Plaintiffs seek declaratory and injunctive relief to set aside an alleged fraud *985 ulent conveyance, by which all of United’s assets allegedly were encumbered in order to finance a cash distribution of over $2.8 billion to shareholders of its parent, Allegis. It is alleged that no consideration from the encumbrance was received by Allegis or United. Plaintiffs allege that the transaction will leave or has left United insolvent, or with unreasonably small capital with which to carry on its business.
Plaintiffs assert standing to bring this action pursuant to Debtor and Creditor Law §§ 273, 274 and 276 (which are identical to Uniform Fraudulent Conveyance Act [UFCA] §§ 4, 5, 7, 7A ULA 474 et seq.) because they are creditors of United with respect to wages, employee benefits, pension and welfare benefits, collective bargaining dues "check-offs”, and other matured and unmatured claims pursuant to various collective bargaining agreements between IAM and United.
Defendants cast this action in a different light. They portray it as an attempt by the Union to obtain an economic advantage for its members which it was unable to obtain from United through the ordinary and recently concluded collective bargaining process. Defendants assert that the Union is attempting to obtain benefits in litigation which it could not achieve at the bargaining table by attacking the corporate restructuring of Allegis in which a self-tender offer for approximately 63% of Allegis’ outstanding shares (at $80 per share) was completed at a cost of approximately $2.8 billion on March 28, 1988.
The key elements of the restructuring plan were: (1) the sale of all of the company’s nonairline subsidiaries (The Hertz Company; Weston Hotel Company and Hilton International Co.); (2) refinancing its then existing debt; and (3) the distribution of the proceeds of these sales to Allegis shareholders. According to defendants, the restructuring of Allegis takes on significance when viewed in the context of the contemporaneous collective bargaining negotiations which had just been concluded, wherein the Union unsuccessfully sought, inter alia, a guarantee of the security of future wages and benefits of IAM member employees. This demand was rejected by the company and did not become part of the collective bargaining agreement which was reached.
On January 8, 1988, plaintiffs brought a fraudulent conveyance action in California Supreme Court seeking, inter alia, an injunction enjoining defendants from taking any steps to use the assets or property of United to consummate the *986 restructuring program. Plaintiffs did not seek a temporary restraining order (TRO). Defendants promptly moved to dismiss or stay the California action on the grounds of forum non conveniens. That motion was granted on February 29, 1988. Plaintiffs were granted leave to commence a new action in either Illinois, Delaware or New York. On March 24, 1988, nine days after the expiration of the tender offer, plaintiffs commenced this action. Plaintiffs did not seek a TRO here.
The complaint alleges three causes of action: (1) violation of section 4 of the UFCA (Debtor and Creditor Law § 273); (2) violation of section 5 of the UFCA (Debtor and Creditor Law § 274); and (3) violation of section 7 of the UFCA (Debtor and Creditor Law § 276). A declaratory judgment and injunctive relief are sought under the Debtor and Creditor Law.
FEDERAL PREEMPTION
Defendants’ first and primary argument in seeking dismissal of the complaint is that plaintiffs’ claims are preempted by the Railway Labor Act (RLA) (45 USC § 151 et seq.) which requires nonjudicial resolution of disputes involving collective bargaining agreements in the transportation industry.
Since 1936, the RLA has governed labor relations in the air transportation industry. The RLA was enacted by Congress to avoid strikes and interruptions of vital interstate commerce, and creates a comprehensive scheme for the resolution of disputes between both airline and railroad carriers and their employees (see, Atchison, Topeka & Santa Fe Ry. Co. v Buell, 480 US 557, 564-565 [1987]). Among the stated purposes of the RLA is the prompt and orderly settlement of "all disputes concerning rates of pay, rules, or working conditions” and of "all disputes growing out of grievances or out of the interpretation or application of agreements covering rates of pay, rules, or working conditions” (45 USC § 151a [4], [5]).
The RLA classifies disputes as being either "major disputes” or "minor disputes”. The classification of disputes determines the procedures to be followed for the resolution thereof (Independent Union of Flight Attendants v Pan Am. World Airways, 789 F2d 139 [2d Cir 1986]). "Major disputes” involve "the formation of collective agreements or efforts to secure them * * * [and] arise where there is no such agreement or where it is sought to change the terms of one” (Elgin, Joliet & E. Ry. Co. v Burley, 325 US 711, 723 [1945]). Such "major *987 disputes” are subject to protracted negotiating mediation, voluntary arbitration, conciliation, and, failing that, may be the subject of economic self-help (e.g., strikes) (Shore Line v Transportation Union, 396 US 142, 148-149 [1969]).
"Minor disputes”, on the other hand, "contemplate * * * the existence of a collective [bargaining] agreement already concluded or, at any rate, a situation in which no effort is made to bring about a formal change in terms or to create a new one” (Elgin, Joliet & E. Ry. Co. v Burley, supra, 325 US, at 723), "Minor disputes” "relate * * * either to the meaning or proper application of a particular provision with reference to a specific situation or to an omitted case” (supra, at 723). Jurisdiction over such "minor disputes” was vested by Congress in adjustment boards rather than in the courts. As the Supreme Court noted in Union Pac. R. R. Co. v Sheehan (439 US 89, 94 [1978]): "In enacting [the RLA], Congress endeavored to promote stability in labor-management relations in this important national industry by providing effective and efficient remedies for the resolution of railroad-employee disputes arising out of the interpretation of collective-bargaining agreements. * * * Congress considered it essential to keep these so-called 'minor’ disputes within the Adjustment Board and out of the courts.”
Defendants contend that the complaint in this action is, in effect, a "minor dispute” within the purview of the RLA. They argue that plaintiffs are seeking to circumvent the RLA provision under the guise of this State’s Debtor and Creditor Law.
In support of this contention, defendants cite a number of lower Federal court decisions which addressed this very issue and held it to be a "minor dispute” under the RLA, and found preemption of the State law claims (see, e.g., Deford v Soo Line R. R. Co., US Dist, Minn, 1987, Rosenbaum, J., No. 4-87-582, affd 867 F2d 1080 [8th Cir 1989]; Railway Labor Executives Assn. v Pittsburgh & Lake Erie R. R. Co., 680 F Supp 192 [WD Pa 1987], revd 858 F2d 936 [3d Cir 1988] [the PLE case]). In the PLE case, the Third Circuit reversed the District Court’s removal of the action, which, like the case at bar, was based solely on allegations of violations of the State’s (Pennsylvania’s) UFCA. It remanded the action to the State court on the ground that there was no complete preemption, since "the complete preemption doctrine did not apply because the rights asserted by the employees were neither created by nor 'substantially dependent upon interpretation of * * * the *988 collective bargaining agreement” (supra, 858 F2d, at 941, quoting Caterpillar Inc. v Williams, 482 US 386, 395 [1987]).
In its most recent decision on the issue of preemption under the RLA, the Supreme Court held that a State tort claim of retaliatory discharge for filing a workers’ compensation claim was not preempted by section 301 of the Labor Management Relations Act of 1947 because "the state-law remedy in this case is 'independent’ of the collective bargaining agreement” because "resolution of the state-law claim does not require construing the collective bargaining agreement” (Lingle v Norge Div. of Magic Chef, 486 US 399, 407 [1988]). In its analysis in Lingle, the Supreme Court noted that in order to show retaliatory discharge (under the applicable Illinois State law), the plaintiff must show that (1) he was discharged or threatened with discharge and (2) the employer’s motive in discharging or threatening to discharge him was to deter him from exercising his rights under the act or to interfere with his exercise of those rights. The Supreme Court noted: "Each of these purely factual questions pertains to the conduct of the employee and the conduct and motivation of the employer. Neither of the elements requires a court to interpret any term of a collective-bargaining agreement” (supra, 486 US, at 407 [emphasis added]).
In the case at bar, in order to establish a fraudulent conveyance, plaintiffs must prove either that the transfer was made without fair consideration, or that it was made with actual intent to hinder, delay or defraud creditors (Farmers Prod. Credit Assn. v Taub, 121 AD2d 681, 682 [2d Dept 1986]) or that defendants were insolvent or were rendered insolvent thereby (Union Natl. Bank v Russo, 64 AD2d 759, 760 [3d Dept 1978]).[2] As in Lingle (supra), it is unnecessary for this court to interpret any terms of the collective bargaining agreement in order to determine plaintiffs’ fraudulent conveyance claims.
Therefore, the complaint is not preempted by the RLA and this court has subject matter jurisdiction over this dispute. To the extent that this holding is at variance with the holding in Deford (supra) this court respectfully differs therewith.
Accordingly, that branch of the motion seeking dismissal of the complaint based upon lack of subject matter jurisdiction is denied.
*989 LACHES AND MOOTNESS
Defendants’ arguments that the complaint should be dismissed on the grounds that plaintiffs are guilty of "inexcusable delay” in bringing this action, and that plaintiffs’ request for injunctive relief is moot, are without merit. Under New York law, a claim to set aside a fraudulent conveyance is governed by the six-year Statute of Limitations set forth in CPLR 213 (Federal Deposit Ins. Corp. v Pappadio, 606 F Supp 631 [ED NY 1985]).
Clearly, this action was brought within the period of limitations. Laches is a purely equitable defense which may not be interposed in an action at law to recover for the tort of fraud (Brown v Lockwood, 76 AD2d 721, 729 [2d Dept 1980]). An action for an equitable remedy to enforce a legal right is not barred by inaction until the legal remedy is barred by the Statute of Limitations (Galway v Metropolitan El. Ry. Co., 128 NY 132). That branch of the motion seeking dismissal of the complaint on the ground of laches is denied.
That branch of the motion seeking dismissal of the complaint on the ground of mootness, i.e., that the corporate restructuring of Allegis has already taken place — is also denied. Plaintiffs are not seeking to enjoin a fait accompli. Rather, they are seeking the assistance of equity to set aside the alleged fraudulent conveyance (see, Debtor and Creditor Law § 278 [1] [a]). Defendants’ arguments would reward the perpetrator of the fraudulent conveyance by ousting the court of its long-standing equitable power to set aside such transactions.
JOINDER
Defendants’ argument that this action should be dismissed because plaintiffs have failed to join necessary parties, i.e., the shareholders of Allegis, is also without merit. The property interest of a shareholder and the corporation are distinct (5303 Realty Corp. v O & Y Equity Corp., 64 NY2d 313 [1984]; Matter of Fontana D’Oro Foods, 65 NY2d 886 [1985]). Just as the individual stockholders have no right to bring an action in their own names for a wrong committed by the corporation (Baker v Latham Sparrowbush Assocs., 129 AD2d 667, 668 [2d Dept 1987]), so, too, are they not proper parties, let alone necessary parties, to this action. There is no allegation that the interests of the stockholders are not adequately represented by defendants.
*990 Accordingly, that branch of the motion seeking dismissal of the action based upon nonjoinder of necessary parties is denied. x
Decision of that branch of the motion seeking summary judgment (CPLR 3212) is reserved pending further discovery by the parties and submission of further papers if they be so advised. The attorneys may contact the court after such additional discovery and exchange of documents has been had in accordance with their agreement in open court.
To recapitulate, that branch of the motion seeks to dismiss the complaint pursuant to CPLR 3211 is denied in its entirety. Those defendants who have been served and have not answered are directed to serve an answer to the complaint within 10 days after service of a copy of this order with notice of entry (CPLR 3211 [f]).

. In May 1988, the shareholders approved a change in the name of the corporation from "Allegis” to "UAL Corporation”.

. The court notes that defendants do not contend that the complaint fails to state a cause of action, CPLR 3211 (a) (7), and, indeed as a pleading, the complaint appears to be legally sufficient.