**Preston M. GEREN, Jr., Individually, and for all owners of the subordinated debt securities of Quantum Chemical Corporation, similarly situated as of December 27, 1988, Plaintiff,**

v.

**QUANTUM CHEMICAL CORPORATION, John Hoyt Stookey, F.L. Brophy, William J. Armfield IV, John M. Belk, Frederick H. Bruenner, Alvin W. Bunis, Mildren Splewak Dresselhaus, S.C. Lea, Michael A. Nicolais, Peter C. Scotese, W.**

Bruce Thomas, Dillon, Read & Co., Inc., the First Boston Corporation, Dillon, Read Interfunding, Inc., the Travelers Insurance Company, First Boston Securities Corporation and Houlihan, Lokey, Howard & Zukin, Inc., Defendants.

No. 92 Civ. 3911(PNL).

United States District Court,
S.D. New York.

Sept. 21, 1993.

Curtis V. Trinko, New York City (Dean Carlton, Gene I. Mesh, Michael Phebes, of counsel), for plaintiff and the Class.

Breed, Abbott & Morgan, New York City (Eric M. Nelson, William M. Sunkel, of counsel), for defendants Quantum Chemical Corp., John Hoyt Stookey, William J. Armfield IV, John M. Belk, Frederick H. Bruenner, Alvin W. Bunis, Mildred Splewak Dresselhaus, S.C. Lea, Peter C. Scotese, W. Bruce Thomas, and Houlihan, Lokey, Howard & Zukin, Inc.

Cravath, Swaine & Moore, New York City (Vicki Share Fleiss, Robert F. Mullen, Susan M. Creavin, Frances M. Lynch, of counsel), for defendants Dillon, Read & Co., Inc., The First Boston Corp., Dillon, Read Interfunding, Inc., The Travelers Ins. Co., and First Boston Securities Corp.

## OPINION AND ORDER

LEVAL, District Judge.

This is an action brought by a holder of corporate bonds against the corporation, its officer, and various advisors and lenders to the corporation, seeking damages because a corporation's distribution to its common stockholders of a special dividend caused a decline in the market value of the bonds. Defendants move to dismiss the complaint.

### Background

Plaintiff Preston M. Geren, Jr., the owner of $100,000 face amount of the 8.875% subordinated debt securities issued by defendant Quantum Chemical Corporation, sues individually and on behalf of all owners of a variety of subordinated debt securities of Quantum (the "Bonds"), similarly situated on December 27, 1988 (generally, the "Bondholders").[1] On that date, Quantum issued a statement reflecting its intention to pay a special dividend of $50 per share to its stockholders. This dividend was paid on January 10, 1989.

According to the complaint, Quantum incurred indebtedness of approximately $1.221 billion (including $80 million in various fees) to pay the special dividend.[2] Payment of the dividend allegedly caused the total shareholder's equity of Quantum to decrease from $748 million to negative $406 million. As a result, payment of the dividend caused the market value of the Bonds to decline by approximately 50%; the complaint states that the market value of Bonds with a face amount of $1.25 billion declined by $625 million.

1. The complaint refers to seven other bond debentures, each with particular interest rates and due dates. Complaint ¶ 23.

2. Payment of the special dividend was initially funded by a $1.15 billion bridge loan from several of the defendants; it was ·subsequently refinanced through Quantum's public offering in March 1989 of $300 million in senior subordinated notes and $500 million in senior subordinated debentures and Quantum's sale of one of its divisions for $480 million.

Along with Quantum, a Virginia corporation with its principal place of business in New York, defendants include the directors of Quantum, the investment advisors who advised Quantum on the special dividend, the entities that originally funded the special dividend through a bridge loan, the entity that was to underwrite an offer of debt securities to finance the special dividend after the bridge loan, and a valuation consulting firm that assisted the investment advisors.

With one exception, noted below, each of the nine counts of the complaint seeks damages of $600 million, representing the decline in value of the Bonds caused by payment of the special dividend. The various defendants move to dismiss all counts of the complaint. Fed.R.Civ.P. 12(b)(6).

## Discussion

On a motion to dismiss, the court must accept the factual allegations in the complaint as true, drawing all reasonable inferences in favor of the plaintiffs, in order to determine whether the complaint is legally sufficient on its face. *Goldman v. Belden,* 754 F.2d 1059, 1065–67 (2d Cir.1985); *Cosmas v. Hassett,* 886 F.2d 8, 11 (2d Cir.1989). The court "should not dismiss the complaint pursuant to Rule 12(b)(6) unless it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Goldman v. Belden,* 754 F.2d at 1065 (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957)).

### A. Counts I, V, and VII: Claim for Breach of Duty of Good Faith and Fair Dealing

■ Counts I, V, and VII all set out essentially the same cause of action. Count I, captioned "misappropriation of assets," alleges that Quantum and its directors owed to the bondholders a duty of good faith and fair dealing and that they violated this duty by diminishing and misappropriating the assets of Quantum by incurring substantial debt to fund the special dividend. Count V alleges that the bondholders had a contractual relationship with Quantum requiring the company to act with the utmost good faith and to engage in fair dealing and that defendants

knowingly interfered with the bondholders contractual rights. Count VII again alleges that the director defendants breached their duty of good faith and fair dealing to the bondholders.

Each of these counts is based on a contractual duty of good faith and fair dealing running from the corporation to its bondholders: they allege that the actions of Quantum in incurring debt to pay the special dividend violated this contractual duty.

The relationship between Quantum and the Bondholders is governed by contract—the indenture for the Bonds. The indenture contains extensive provisions governing the rights of the parties and the obligations of the corporation. The principle promise by Quantum is

> that it will duly and punctually pay or cause to be paid the principal of, premium, if any, and interest, if any, on the Debentures of such series at the place, at the respective times and in the manner provided in the Debentures in such series.

§ 5.01. To protect the Bondholders against future creditors acquiring prior claims against the assets of the corporation, the indenture also contains an agreement by Quantum not to incur certain secured indebtedness while any of the debentures remain outstanding. § 5.05. With the exception of this prohibition on secured indebtedness, the indenture places no restrictions on the amount or purpose of debt to be incurred by the corporation.

Plaintiff does not claim that defendants violated an explicit covenant in the indenture. The claim set out in Counts I, V, and VII is that defendants violated an *implied* covenant of good faith and fair dealing not to take an action such as the financing and payment of the special dividend that would reduce the market value of the debentures by diminishing the likelihood that all interest and principal payments would be met.

■ Every contract governed by New York law, including the indenture at issue here, contains an implied covenant of good faith and fair dealing. *Hartford Fire Ins. Co. v. Federated Department Stores, Inc.,* 723 F.Supp. 976, 991 (S.D.N.Y.1989) (citing

*Rowe v. Great Atlantic & Pacific Tea Co.,* 46 N.Y.2d 62, 412 N.Y.S.2d 827, 830, 385 N.E.2d 566, 568–69 (1978)). Such an implied covenant, however, can only impose an obligation "consistent with other mutually agreed upon terms in the contract." *Sabetay v. Sterling Drug, Inc.,* 69 N.Y.2d 329, 335, 514 N.Y.S.2d 209, 212, 506 N.E.2d 919, 922 (1987); *accord Metropolitan Life Ins. Co. v. RJR Nabisco, Inc.,* 716 F.Supp. 1504, 1517 (S.D.N.Y.1989). "The covenant is violated when a party to a contract acts in a manner that, although not expressly forbidden by any contractual provision, would deprive the other of the right to receive the benefits under their agreement." *Don King Productions, Inc. v. Douglas,* 742 F.Supp. 741, 767 (S.D.N.Y.1990) (citing cases); *accord Metropolitan Life Ins. Co. v. RJR Nabisco, Inc.,* 716 F.Supp. at 1517; *Collard v. Incorporated Village of Flower Hill,* 75 A.D.2d 631, 632, 427 N.Y.S.2d 301, 302 (2d Dept.1980), *aff'd,* 52 N.Y.2d 594, 439 N.Y.S.2d 326, 421 N.E.2d 818 (1981). Put another way, the implied covenant "ensures that parties to a contract perform the substantive bargained-for terms of their agreement." *Metropolitan Life Ins. Co. v. RJR Nabisco, Inc.,* 716 F.Supp. at 1517 (citation omitted).

For example, in *Van Gemert v. Boeing Co.,* 520 F.2d 1373 (2d Cir.), *cert. denied,* 423 U.S. 947, 96 S.Ct. 364, 46 L.Ed.2d 282 (1975), holders of convertible debentures had an express contractual right to receive notice of the issuer's intent to redeem the debentures; this notice would allow them to determine whether they wanted to exercise the conversion privilege attached to their bonds. The indenture did not specifically provide for the form of this notice. The issuer gave notice through a press release that did not provide the information necessary for the bondholders to decide whether to exercise their conversion rights prior to redemption of the debentures. The Second Circuit relied on the implied covenant of good faith and fair dealing to construe the notice requirement as mandating the furnishing of sufficient information to permit bondholders to assess meaningfully their options. 520 F.2d at 1383–85. However, courts have declined to find that the implied covenant of good faith and fair dealing adds to the contract a sub-

stantive provision not included by the parties. *See, e.g., Harris Trust and Savings Bank v. E–II Holdings, Inc.,* 926 F.2d 636, 643–44 (7th Cir.) (New York law), *cert. denied,* —— U.S. ——, 112 S.Ct. 192, 116 L.Ed.2d 152 (1991); *Metropolitan Life Insurance Co. v. RJR Nabisco, Inc.,* 716 F.Supp. 1504 (S.D.N.Y.1989); *Hartford Fire Insurance Co. v. Federated Department Stores, Inc.,* 723 F.Supp. at 990–93.

In *Metropolitan Life Insurance Co. v. RJR Nabisco, Inc.,* 716 F.Supp. 1504 (S.D.N.Y.1989), then District Judge Walker faced the almost identical legal issue to that presented here. In *RJR Nabisco,* the issuer engaged in a leveraged buy-out, in which a group of investors "buy the company under financial arrangements that include little equity and significant new debt.... [A] portion of this debt is generally secured by the company's assets." *Id.,* 716 F.Supp. at 1505 n. 1. As a result of RJR Nabisco's assumption of billions of dollars of new debt, the value of bonds previously issued by the company declined significantly. Two institutional bondholders brought suit, claiming that RJR Nabisco's incurrence of debt violated an implied covenant of good faith and fair dealing. Judge Walker rejected this claim, reasoning that the indentures at issue gave the bondholders only the explicit right to receive periodic interest payments and the repayment of principal. Judge Walker explained that,

> There being no express covenant between the parties that would restrict the incurrence of new debt, and no perceived direction to that end from covenants that are express, this Court will not imply a covenant to prevent the recent LBO and thereby create an indenture term that ... was not bargained for here and was not even within the mutual contemplation of the parties.... These plaintiffs do not invoke an implied covenant of good faith to protect a legitimate, mutually contemplated benefit of the indentures; rather, they seek to have this Court create an additional benefit for which they did not bargain.

716 F.Supp. at 1508, 1519. Similarly, in *Hartford Fire Insurance Co. v. Federated Department Stores, Inc.,* 723 F.Supp. 976

(S.D.N.Y.1989), Federated Department Stores, which had issued a series of bonds pursuant to an indenture, agreed to be acquired as part of a leveraged buy-out. This transaction caused the value of its bonds to decline significantly. Judge Sweet declined to find an implied covenant of good faith and fair dealing that would bar this transaction, explaining that,

> Implying a term barring Federated's merger with CRTF also would require the court to add a substantive provision for which the parties did not bargain. That is especially troublesome in light of the fact that the Indenture could easily have been drafted to incorporate expressly the terms the Plaintiffs now urge this court to imply. For example, the Indenture could have barred mergers altogether, permitted the Noteholders to participate in a tender offer by making the Notes convertible into stock, or required the Notes to be redeemed in the event of a takeover. It also could have restricted the amount of additional debt Federated could incur or imposed ceilings on the ratios of debt to equity, debt to assets, or earnings to fixed charges.

723 F.Supp. at 992. *See also Caplan v. Unimax Holdings Corp.*, 188 A.D.2d 325, 591 N.Y.S.2d 28, 29 (1st Dept.1992); *Harris Trust and Savings Bank v. E–II Holdings, Inc.*, 926 F.2d at 642–44 (New York law), *cert. denied,* —— U.S. ——, 112 S.Ct. 192, 116 L.Ed.2d 152 (1991); *Gardner & Florence Call Cowles Foundation v. Empire, Inc.*, 589 F.Supp. 669, 673–74 (S.D.N.Y.1984).[3]

 These conclusions are equally applicable here. As noted, the indenture addresses the possibility of Quantum incurring additional debt and places certain limitations on Quantum's ability to take on additional secured indebtedness. However, the indentures contain no restriction on the amount of debt Quantum may incur nor does it contain any prohibition against transactions in the nature of the special dividend. *See RJR Nabisco,* 716 F.Supp. at 1515; *Hartford Fire*

*Ins. Co.,* 723 F.Supp. at 992. As Judge Knapp noted in *Gardner & Florence Call Cowles Foundation v. Empire Inc.,* 589 F.Supp. at 674, "Defendants ... were under a duty to carry out the terms of the contract, but not to make sure that plaintiffs had made a good investment. The former they have done; the latter we have no jurisdiction over." If the challenged transaction does not violate any express term of the indenture, or prevent the bondholder from obtaining the benefit of an express indenture term, a bondholder may not challenge an action by the corporation on the basis of breach of the indenture contract. As Judge Walker noted in *RJR Nabisco,*

> In brief, there is no implied covenant restricting any action that might subject plaintiff's investment to greater risk of non-payment. What plaintiffs have failed to allege is that an interest or principal payment due them has not been paid, or than any other explicit contractual right has not been honored.

716 F.Supp. at 1519 n. 24.

Plaintiff makes several, unconvincing arguments as to why the conclusion of *Metropolitan Life Ins. Co. v. RJR Nabisco, Inc.* should not apply to the complaint here. Plaintiff first notes that *RJR Nabisco* involved a leveraged buy-out and a more justifiable business transaction. *See* 716 F.Supp. at 1507. I do not believe these distinctions import any significant difference. In both cases, the corporation took on extensive additional debt, reducing the market value of the plaintiffs' debentures and the likelihood of their being paid when due; the issue in both cases is the same: whether such act violates implied covenants of the indenture.

Plaintiff next attempts to distinguish *RJR Nabisco* on the ground that the Bondholders constituting the plaintiff class are not sophisticated investors. It is true that Judge Walker noted the sophistication of the plaintiff bondholders in that suit, two life insurance company with billions of dollars invested in securities. *See* 716 F.Supp. at 1505,

---

3. The American Bar Foundation's *Commentaries on Indentures* 1–2 (1971) notes that:

> Short of bankruptcy, the debt security holder can do nothing to protect himself against ac-

tions of the borrower which jeopardize its ability to pay the debt unless he ... establishes his rights through contractual provisions set forth in the debt agreement or indenture.

1508, 1522. I do not believe Judge Walker contemplated a cause of action that would lie in favor of ordinary investors but not in favor of market professionals. As Judge Walker's opinion expressly notes, although indentures are generally not the product of negotiations between the issuing company and the ultimate holders, "underwriters ordinarily negotiate the terms of the indentures with the issuers." 716 F.Supp. at 1509. It is not as if these Bonds were issued on unconscionable terms that duped unsophisticated investors; nor is this a case where the Bonds seemed to carry protections that were contradicted by refinements in the fine print. There is nothing about these Bonds that suggested to investors that the indenture prohibited the issuer from issuing new debt or paying dividends. The sophistication of the investors in *RJR Nabisco* does not involve a meaningful distinction.

Accordingly, I conclude that the allegations of Counts I, V, and VII, based on the contention that defendant's actions violated an implied duty of good faith and fair dealing, fail to state a claim. These counts must therefore be dismissed.[4]

B. *Count II: Claim under Virginia Corporate Law*

■ Count II alleges that the special dividend violated Virginia corporate law because it left the corporation with less assets than liabilities. Section 13.1–653(C)(2) of the Virginia Code provides, in pertinent part, "[n]o distribution may be made if, after giving it effect ... [t]he corporation's total assets would be less than the sum of its liabilities...." 3 Va.Code Ann. § 13.1–653(C)(2). Count II appears to be asserted both against the directors of Quantum and against the other participants in the payments of the dividend.

Both the director and non-director defendants move to dismiss. Section 13.1–692 of the Virginia Code provides that

a director who votes for or assents to a distribution made in violation of this chapter ... is personally liable to the corporation or its creditors for the amount of the distribution that exceeds what could have been distributed without violating this chapter or the articles of incorporation.

3 Va.Code Ann. § 13.1–692(A). The statute, it appears, thus makes only the directors of the corporation liable for payment of such a dividend. *See In re C–T of Virginia, Inc.*, 958 F.2d 606, 609–10 (4th Cir.1992) (under § 13.1–692(A), "a creditor's only remedy is against the directors" of the corporation); *see also Curley v. Dahlgren Chrysler–Plymouth, Dodge, Inc.*, 429 S.E.2d 221, 223 (Va. 1993) ("If corporate assets are distributed in violation of Code § 13.1–653, a director may be liable to the corporation and to its creditors under certain circumstances. Code § 13.1–692(A).").

In any event, the claim is time-barred. The same section that provides for the liability of directors states that

No suit shall be brought against any director for any liability imposed by this section except within two years after the right of action shall accrue.

3 Va.Code Ann. § 13.1–692(C). Here, plaintiff's cause of action accrued on or before January 10, 1989, the date the special dividend was paid. This action was not filed until May 29, 1992, more than two years later.

■ Plaintiff contends that this court, sitting in diversity, should apply the longer statute of limitations of New York, the state in which the court sits. *See Martin v. Julius Dierck Equipment Co.*, 43 N.Y.2d 583, 588, 403 N.Y.S.2d 185, 187, 374 N.E.2d 97, 98–99 (1978); *see also Restatement (Second) of the Conflict of Laws* § 142 (1971). However, where the very right sued upon, and not merely the remedy, is time-barred under the laws of the state that create the right, New

---

4. I recognize that technically, this issue might be more appropriately treated on a motion for summary judgment, as my decision relies in part on documents beyond the face of the complaint. Nonetheless, I note that the only extraneous item I have considered is the bond indenture. The contents of this document are not disputed, and

the indenture could well have been attached to the complaint. In this context, I believe that this motion is appropriately treated as a motion to dismiss. In contrast to granting summary judgment, dismissing the complaint for failure to state a claim allows plaintiff to replead.

York, as the forum state, does not substitute its longer statute. *See Martin v. Julius Dierck Equipment Co.*, 43 N.Y.2d at 588–89, 403 N.Y.S.2d at 187, 374 N.E.2d at 98–99 (discussing N.Y. CPLR § 202); *see also Restatement* § 143 ("An action will not be entertained in another state if it is barred in the state of the otherwise applicable law by a statute of limitations which bars the right and not merely the remedy."). Hence, if a foreign statute "creates but a single right of action and also contains a provision limiting the time in which actions under the statute may be brought," the foreign statute of limitations is applicable. *Id.* § 143 cmt. c. "The test for whether the limitation bars the 'right' and not the 'remedy' is: 'Was the limitation "directed to the ... liability so *specifically* as to warrant saying that it qualified the right?"'" *Thorn v. New York City Dept. of Social Services*, 523 F.Supp. 1193, 1200 (S.D.N.Y.1981) (quoting *Bournias v. Atlantic Maritime Co.*, 220 F.2d 152, 156 (2d Cir.1955) (citation omitted) (emphasis in original)). Here, the two year time-bar is set out in the very same section of the Virginia Code as the provision providing for liability of corporate directors; the two year period in § 13.1–692(C) specifically limits the right set out in § 13.1–692(A). This court must apply the relevant Virginia statute of limitations; Count II of the complaint is time-barred and must be dismissed.

## C. *Count III: Ultra Vires*

Count III, captioned *"ultra vires,"* alleges that the actions of defendants in paying the special dividend was beyond the power and authority of Quantum. In response to defendants' motion to dismiss this count, plaintiff has stated that this claim "will be withdrawn without prejudice." Pl.Mem. at 33. Count III is therefore dismissed without prejudice.

## D. *Count IV: Breach of Fiduciary Duty*

■ Count IV alleges that defendants' actions incurring additional debt on behalf of Quantum breached their common law fiduciary duties of due care and loyalty to Quantum's bondholders. Defendants contend, *inter alia*, that this claim is time-barred. I agree.

■ The parties agree that New York's statute of limitations is applicable, but disagree as to which of two possible limitations periods applies to this action. Under New York law, "the choice of the applicable Statute of Limitations depends on the substantive remedy which the plaintiff seeks." *Loengard v. Santa Fe Industries, Inc.*, 70 N.Y.2d 262, 519 N.Y.S.2d 801, 803, 514 N.E.2d 113, 115 (1987) (citing cases). Actions for damages from breach of fiduciary duty are governed by the three-year period in N.Y. CPLR § 214(4); actions seeking equitable relief are governed by the six-year period in § 213(1). If the former statute is applicable, plaintiff's claim, filed nearly three and a half years after payment of the special dividend, is time-barred.

In *Loengard v. Santa Fe Industries, Inc.*, the New York Court of Appeals noted that,

> A claim based on a breach of the fiduciary obligation owed by the majority shareholders to the minority in forcing the minority to sell their shares in a freeze-out merger at a substantially undervalued price is essentially equitable in nature.

519 N.Y.S.2d at 803, 514 N.E.2d at 115 (citing cases). Plaintiff contends that, as in *Loengard*, Count IV essentially seeks equitable relief. I do not agree. The *Loengard* court explained that, in an ordinary freeze-out merger,

> the statutory right of appraisal is, in the absence of a showing of fraud or blatant overreaching, the minority's exclusive remedy. In the exceptional case, where upon a showing of fraud, misrepresentation or self-dealing the appraisal remedy is held not to be adequate, the minority may seek relief from a court of equity.

*Id.* at 803, 514 N.E.2d at 115 (citing cases). In *Loengard*, the minority shareholders had received their legal remedy, but they alleged that, because they had been forced to sell their shares at a price that, due to fraud, was "substantially undervalued," this legal remedy was inadequate. Hence, the plaintiffs in *Loengard* sought equitable relief where the relief provided by statute was inadequate. The court

note[d] that the relief demanded in the complaint here—the restoration of the minority to their status as full stockholders, or, alternatively, a determination of the fair value of their shares and an order directing defendants to pay that value to them—is equitable in nature and that a legal remedy would not be adequate. *Id.* at 803, 514 N.E.2d at 115.

Plaintiff here, in contrast, seeks a simple award of damages—$600 million in money damages to compensate for the decline in the value of the bonds. *See Resnick v. Resnick,* 763 F.Supp. 760, 768 (S.D.N.Y.1991) ("claims for damages to compensate for the appropriation of corporate opportunities and the diversion of its corporate assets are more in the nature of a legal action"); *Posner v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 469 F.Supp. 972, 980 n. 20 (S.D.N.Y.1979). Count IV does not seek, for example, to compel the shareholders to return the special dividend to the corporation. I conclude that Count IV falls under the three year limitation of CPLR § 214(4) for an action at law for breach of fiduciary duty and not under the six year statute of § 213(1) for actions seeking equitable relief. Count IV must therefore be dismissed as time-barred.

E. *Count VI: Fraudulent Conveyance Claim*

■ Count VI, brought against the defendants who are directors of Quantum, alleges that the payment of the special dividend was a fraudulent conveyance; this count seeks $600 million in damages and an order voiding the transaction and requiring that the fraudulently conveyed assets be returned to Quantum.

■ "The gravamen of the action [for fraudulent conveyance] is the right of the creditor to be paid out of assets to which he is actually entitled and to set aside the indicia of ownership which apparently contradict that right." *Id.,* 283 N.Y. at 142, 27 N.E.2d at 817. Under the Uniform Fraudulent Conveyance Act, which is embodied in Article 10 of the New York Debtor and Creditor Law, N.Y. DCL §§ 270–81, *see Hearn 45 St. Corp. v. Jano,* 283 N.Y. 139, 142, 27 N.E.2d 814, 816 (1940), (a) if a debtor makes a transfer which is not for fair consideration, and (b) the debtor was either insolvent at the time of the transaction or rendered insolvent by the transaction, the creditor may cause the transfer to be rescinded. N.Y. DCL § 273; *see Hearn 45 St. Corp. v. Jano,* 283 N.Y. 139, 27 N.E.2d 814 (1940); *see generally Moody v. Security Pacific Business Credit, Inc.,* 971 F.2d 1056, 1063–66 (3d Cir.1992); Kevin J. Liss, Note, "Fraudulent Conveyance Law and Leveraged Buyouts," 87 *Colum.L.Rev.* 1491, 1496–97 (1987). The purpose of such an action is to force the debtor to recover property transferred for inadequate consideration so that the property can be used to satisfy the debt owed to the creditor.

Count VI fails to state a claim for fraudulent conveyance and must be dismissed. The remedy plaintiff seeks against the director defendants is an award of damages representing the diminution in the market value of the debt securities caused by the payment of the special dividend. Such relief is not within the scope of the cause of action for fraudulent conveyance.

First, the cause of action of fraudulent conveyance does not allow for recovery of the decline in the market value of a creditor's debt securities allegedly caused by the fraudulent conveyance. "The creditor's remedy in a fraudulent conveyance action is limited to reaching the property which would have been available to satisfy the judgment had there been no conveyance," and requiring that it be restored to the debtor's possession. *Marine Midland Bank v. Murkoff,* 120 A.D.2d 122, 508 N.Y.S.2d 17, 25 (2d Dept.1986), *appeal dismissed,* 69 N.Y.2d 875, 514 N.Y.S.2d 1029, 507 N.E.2d 322 (1987); *accord Federal Deposit Insurance Corp. v. Porco,* 75 N.Y.2d 840, 552 N.Y.S.2d 910, 911, 552 N.E.2d 158, 159 (1990) (prior to judgment on a debt, New York's fraudulent conveyance law allows only for "nullification of the conveyance"); *see Marine Midland Bank v. Murkoff,* 508 N.Y.S.2d at 23 ("remedy provisions [of New York fraudulent conveyance law] ... allow the creditor only to reach the property as if there had been no conveyance (Debtor and Creditor Law § 278), or, if its claim has not yet been established, to protect the property for its benefit (Debtor and Creditor Law

§ 279)"); *see generally Hearn 45 St. Corp. v. Jano,* 283 N.Y. at 142, 27 N.E.2d at 816 (essence of a fraudulent conveyance claim is that it allows a creditor to collect on his debt by "undo[ing] the transfer of title so as to bring within the ambit of execution those assets upon which the creditor is rightly entitled to levy"). The cause of action for fraudulent conveyance does not provide for damages against persons who caused the transfer to compensate for diminution in the market value of the debt instruments.

Indeed, the action for fraudulent conveyance does not create an independent remedy of money damages against third parties who aided the debtor's transfer at all. *Federal Deposit Insurance Corp. v. Porco,* 75 N.Y.2d 840, 552 N.Y.S.2d 910, 911, 552 N.E.2d 158, 159 (1990) ("the traditional rule in this State rejects any cause of action for mere participation in the transfer of a debtor's property prior to the creditor's obtaining a judgment or lien on that property") (citation omitted); *accord Blakeslee v. Rabinor,* 182 A.D.2d 390, 582 N.Y.S.2d 132, 134 (1st Dept.1992). The New York Court of Appeals recently explicitly rejected the contention that New York law "created a creditor's cause of action in conspiracy, assertable against nontransferees or nonbeneficiaries solely for assisting in the conveyance of a debtor's assets." *Federal Deposit Insurance Corp. v. Porco,* 75 N.Y.2d 840, 552 N.Y.S.2d at 911, 552 N.E.2d at 159.

The essence of the action is that it seeks to rescind the transfer, requiring transferee to return the transferred property to the transferor. Although Count VI asserts that it seeks nullification of the dividend and return of the distributed cash, plaintiff has named neither the transferees (the shareholders) nor the transferor (Quantum) as defendants in that count. To the degree Count VI seeks an order voiding the special dividend transaction, it fails to name any of the parties to that transaction. *See generally* W.J. Dunn, Annotation, *Necessary Parties Defendant to Action to Set Aside Conveyance in Fraud of Creditors,* 24 A.L.R.2d 395, 422–24 (1952); *but cf. International Association of Machinists and Aerospace Workers v. Allegis Corp.,* 144 Misc.2d 983, 545 N.Y.S.2d 638, 643 (N.Y.Cty.1989).

Thus, for numerous reasons explained above, Count VI fails to state a cause of action and must be dismissed.

**F. Count VIII: Negligent Breach of Contract Claim**

Count VIII, captioned "Negligent Breach of Contract" and brought against the investment advisors and the valuation advisor, alleges that they violated their duty of care owed to the bondholders by rendering faulty and deficient advice that payment of the special dividend was in the best interests of Quantum. These defendants move to dismiss on the grounds that negligent breach of contract is not a cognizable cause of action in New York and that plaintiff's allegations fail to state a claim sounding in either contract or tort. In response, plaintiff has withdrawn this claim; accordingly, Count VIII is dismissed without prejudice.

**G. Aiding and Abetting**

Count IX alleges that the investment advisors and Travelers Insurance Co., which was to underwrite the special dividend by purchasing debt securities, aided and abetted Quantum and its officers and directors in their breaches of fiduciary duty owed to the bondholders. However, the complaint fails to state a claim for aiding and abetting a breach of fiduciary duty. "A plaintiff seeking to establish a cause of action for aiding and abetting a breach of a fiduciary duty must show: '(1) the existence of a . . . violation by the primary (as opposed to the aiding and abetting) party; (2) "knowledge" of this violation on the part of the aider and abettor; and (3) "substantial assistance" by the aider and abettor in the achievement of the primary violation.'" *Samuel M. Feinberg Testamentary Trust v. Carter,* 652 F.Supp. 1066, 1082 (S.D.N.Y. 1987) (quoting *ITT v. Cornfeld,* 619 F.2d 909, 922 (2d Cir.1980)); *see also Terrydale Liquidating Trust v. Barness,* 611 F.Supp. 1006, 1027 (S.D.N.Y.1984). Here, the first of these requirements is not met, for, as explained above, plaintiff's claim for a primary violation by Quantum and its directors, a breach of fiduciary duty, is time-barred. Where the primary violation is barred by the applicable

statute of limitations, a claim for aiding and abetting this primary violation fails to state a claim. *Wood v. Wood,* 312 F.Supp. 762, 763 (S.D.N.Y.1970). Count IX is dismissed.[5]

### Conclusion

The motion to dismiss is granted as to all counts.

Plaintiff may file an amended complaint not inconsistent with this opinion or with the requirements of Rule 11, Fed.R.Civ.P., within forty-five (45) days of the date of this order.

SO ORDERED.

---

5. *Moreover, even if the primary violation were not time-barred, the allegations of Count IX would fail to state a claim, for the case law does not support the existence of a fiduciary duty running from a corporation and its directors to the holders of the corporation's bonds. See generally Metropolitan Life Insurance Co. v. RJR Nabisco, Inc.,* 716 F.Supp. at 1524–25 *(discussing New York law); Metropolitan Securities v. Occidental Petroleum Corp.,* 705 F.Supp. 134, 141 *(S.D.N.Y.1989). As noted above, the Bondholders are creditors in an arm's length relationship with the debtor, which is governed by the terms of their contract.*

Plaintiff's brief does not treat Count IX as presenting a claim that the investment and lending advisors themselves breached a fiduciary duty owed to the bondholders, but that count might be read that way. To the degree plaintiff makes such a claim, I believe that it also fails to state a claim, for the investment and lending advisors owed no such duty to the bondholders. These defendants were retained by Quantum to render advice. They had no connection with the bondholders, and the bondholders would hardly have relied on the actions or advice of these defendants.