**CAMOTEX, S.R.L., Plaintiff,**

v.

**Lamar HUNT, International Metals Investment Co., Ltd., Prudential–Bache Securities, Inc., Bache Halsey Stuart Shields, Inc., Bache Group, Inc., Merrill Lynch Pierce Fenner & Smith Incorporated, Gilion Financial, Inc., Naji Robert Nahas, Sheik Mohammed Aboud Al–Amoudi, Sheik Ali Bin Mussalem, and Banque Populaire Suisse, Defendants.**

No. 89 Civ. 3531(MEL).

United States District Court,
S.D. New York.

Nov. 30, 1990.

See also 741 F.Supp. 1086.

Alan Raywid, Margaret E. Haering, Bart M. Bukas, Cole, Raywid & Braverman, Washington, D.C., Peter N. Wang, Jessica L. Rich, Friedman, Wang & Bleiberg, P.C., New York City, for plaintiff.

Rogers & Wells, New York City, for defendant Merrill Lynch Pierce Fenner & Smith, Inc.; W.R. Glendon, Guy C. Quinlan, of counsel.

Cahill Gordon & Reindel, New York City, for defendants Prudential–Bache Securities, Inc. and Prudential Securities Group, Inc.; Susan Buckley, of counsel.

LASKER, District Judge.

Camotex, S.R.L. ("Camotex") brought this suit against Lamar Hunt and others including Bache Halsey Stuart Shields, Inc. (now known as Prudential–Bache Securities, Inc.) and Bache Group, Inc. (now known as Prudential Securities Group, Inc.) (collectively "Bache") and Merrill Lynch Pierce Fenner & Smith Inc. ("Merrill Lynch"), alleging a conspiracy to manipulate the silver commodities markets in 1980.

Bache and Merrill Lynch move for summary judgment to dismiss the action as time barred. It has been previously held that Camotex's cause of action arose no later than May 1980. In making this motion, Bache and Merrill Lynch initially argued that because the latest date of Camotex's injury was March 27, 1980 (the date of the silver price collapse), that is the latest date at which Camotex's cause of action could have accrued. *Zenith Radio Corp. v. Hazeltine Research, Inc.,* 401 U.S. 321, 338, 91 S.Ct. 795, 806, 28 L.Ed.2d 77 (1971) (stating, "[g]enerally, a cause of action accrues and the statute begins to run when a defendant commits an act that injures a plaintiff's business").

Camotex's amended complaint, however, alleges that the brokers' role in the alleged market manipulation was fraudulently concealed, and was not and could not be known before May 1980. First Amended Complaint ¶¶ 120–123. Camotex maintains that therefore the running of the statute of limitations should be equitably tolled until whenever sufficient facts became available to suggest the brokers' involvement. Bache and Merrill Lynch now argue that despite Camotex's allegations of fraudulent concealment, sufficient information was publicly available in late March 1980 that Camotex knew or should have known of facts that constitute notice of its cause of action against the brokers. If Bache and Merrill Lynch are correct that the statute of limitations began to run on March 27, 1980, this action is time barred. If, as Camotex argues, the statute did not begin to run before May 1980, the cause of action survives.

The parties now agree that the statute of limitations began to run only when Camotex "either acquire[d] actual knowledge of the facts that comprise [its] cause of action or should have acquired such knowledge through the exercise of reasonable diligence after being appraised of sufficient facts to put [it] on notice." *Cerbone v. International Ladies Garment Workers' Union,* 768 F.2d 45, 48 (2d Cir.1985) (further observing, "The doctrine has been applied in cases alleging causes of action other than fraud where the facts show that the defendant engaged in conduct ... that concealed from the plaintiff the existence of the cause of action").

The Court of Appeals for this Circuit has applied the doctrine of equitable tolling either where the defendant affirmatively concealed the facts giving rise to a plaintiff's claim or where the defendant's acts were inherently self-concealing. *New York v. Hendrickson Brothers, Inc.,* 840 F.2d 1065, 1083 (2d Cir.1988). In either of these situations, according to *Hendrickson Brothers,* "an antitrust plaintiff may prove fraudulent concealment sufficient to toll the running of the statute of limitations if he establishes (1) that the defendant concealed from him the existence of his cause of action, (2) that he remained in ignorance of that cause of action until some point within four years of the commencement of his action, and (3) that his continuing igno-

rance was not attributable to a lack of diligence on his part." *Id.*[1]

■ Given Camotex's allegations of fraudulent concealment and recognizing the plausibly self-concealing nature of a broker's involvement in a market manipulation conspiracy, the question becomes whether sufficient facts were available to Camotex that it can be charged with notice of the existence of its cause of action earlier than May 1980.

Both parties have submitted voluminous excerpts from major business and general-readership publications' accounts of the relevant events to support their respective contentions as to the knowledge chargeable to Camotex.

Bache and Merrill Lynch have submitted mainly American articles, which those parties argue constitute notice to Camotex of its cause of action, and which prior to May focus largely on the Hunts' losses in the silver markets and their extensive debts, including some to brokers. Some of these identify Bache as having made a margin call which the Hunts failed to meet, report that the Hunts owned shares of Bache, and observe that the Hunts were believed to have outstanding debts to Merrill Lynch on silver futures. *See* "The Hunts Sell Silver, And Its Fall Tarnishes Many Other Markets", *Wall Street Journal*, March 28, 1980, Part 2 (Exhibit A to the October 27, 1989 Affidavit of Thomas J. Lilly) ("Lilly Affidavit"). However, as late as May 2, 1980 it was reported that "[d]espite numerous investigations by Government agencies, Congressional committees and the commodity industry itself, the full extent of the exposure of banks and brokerage firms has still not come out." *See* "10 Banks Lent Bache $233 Million", *N.Y.*

*Times*, May 2, 1980, § D, at 1 (Exhibit A to the August 24, 1990 Declaration of Margaret E. Haering) ("Haering Declaration"). On May 20, 1980, the Wall Street Journal observed that "nobody really knows yet" what caused the silver market's collapse. *Wall Street Journal*, May 20, 1980, May 20, 1980, at 1 (Exhibit C, Haering Declaration).

Camotex relies extensively on the Declaration of Rudolf Carl–Heinz Croenert (who resided in Germany: Camotex's headquarters are in Italy), who was its president in 1980. Croenert was a frequent reader of German and Italian newspapers and business publications, and an occasional reader of international publications like the *International Herald Tribune.* He admits that he learned early on of the March 27 decline in silver futures prices, and that he was aware of the Hunts' failure to meet a margin call by Bache on that day. However, he asserts that he was not aware of other financing by Bache or Merrill Lynch of the Hunts' silver futures purchases, nor did he suspect the brokers' involvement in any conspiracy to monopolize or manipulate the silver market.

Croenert's representation as to his actual knowledge is supported by excerpts which he provides from European news sources. While these articles do report the silver price collapse promptly, and do indicate the Hunts' financial difficulties, they do not indicate any financial involvement of Bache or Merrill Lynch other than the Hunts' failure to meet a $100 million margin call from Bache (reported March 29–30 in the German publication *Hanselblatt*).

Even if Camotex were chargeable with knowledge of information contained in American reports of the price collapse,[2]

---

1. Bache and Merrill Lynch argue that Camotex should be barred from invoking this doctrine because Camotex has not shown it diligently attempted to discover the facts giving rise to its cause of action. They cite as support *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 461 (2d Cir.1974) (stating that the plaintiff must show "that he exercised due diligence and that some affirmative act of fraudulent concealment frustrated discovery notwithstanding such diligence"). However, the more recent Second Circuit formulation in *Hendrickson Brothers*

makes clear that the sole requirement is a showing that plaintiff's failure to discover relevant facts was not caused by a lack of diligence. That rule applies here.

2. Camotex argues that it is chargeable only with information contained in European publications, and that European coverage of the market collapse did not so much as identify lenders who financed the Hunts' silver trading. Because of the conclusion that even the more extensive information available in American

there was insufficient public indication of Bache's and Merrill Lynch's involvement to trigger the running of the statute of limitations before May. The plaintiffs may well be chargeable with earlier knowledge of the Hunts' involvement, but coverage of the market collapse provided scant indication of Bache's and Merrill Lynch's role beyond their ordinary functions as brokers. Before May, press accounts provided by the parties suggest nothing unusual about Bache's and Merrill Lynch's relationship with the Hunts other than the high dollar volume of trades and margin loans. That high volume alone does not constitute notice of a possible scheme to manipulate the market. The involvement of brokers in a market manipulation scheme is sufficiently abnormal—or at least non-obvious—that a participant in the market cannot be held to have been put on notice of that involvement merely because the broker assisted its customer in financing the customer's activities.

Bache and Merrill Lynch argue that although details of their role in the Hunts' trading were not publicly known before May, the availability of general information concerning the alleged fraudulent scheme is sufficient notice to trigger the statute of limitations. However, the information available before May 1980 did not rise to the level of alerting a participant in the market of wrongful activity by Bache and Merrill Lynch; rather, that information gives the impression that the brokers had provided ordinary brokerage services on a large scale, and as a result were newly exposed to potential losses.

Accordingly, the motion for summary judgment by defendants Bache and Merrill Lynch is denied.

It is so ordered.

---

publications provided Camotex with insufficient notice to trigger the statute of limitations, the question whether Camotex is chargeable with knowledge of those publications need not be decided.