MERIDIEN INTERNATIONAL BANK LIMITED, Plaintiff,

v.

THE GOVERNMENT OF THE REPUBLIC OF LIBERIA and Liberia Telecommunications Corporation, Defendants.

No. 92 CIV. 7039 AGS RJW.

United States District Court, S.D. New York.

Nov. 5, 1998.

Dorsey & Whitney LLP, New York, NY, Mark S. Sullivan, Bruce R. Ewing, of Counsel, for Plaintiff.

Leventhal & Slade, New York, NY, Jeffrey C. Slade, of Counsel, Reichler, Milton & Médel, Washington, D.C., Paul S. Reichler, Kathleen Milton, of Counsel, for Defendants.

## OPINION

ROBERT J. WARD, District Judge.

Plaintiff/Counterclaim-defendant Meridien International Bank Limited ("Meridien") moved pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) to dismiss the First, Second, Third, Fourth, Fifth, Sixth, Seventh, Eighth, Tenth, Eleventh, Twelfth, Thirteenth, and Fourteenth Counterclaims in the Amended Answer and Counterclaims of defendants, the Government of Liberia ("Republic" or "GOL") and Liberia Telecommunications Corporation ("LTC"). The motion to dismiss is granted in part and denied in part.[1]

## BACKGROUND

Meridien filed a complaint alleging breach of contract and seeking the recovery of mon-

---

1. Although this action remains on the docket of Judge Schwartz, the instant motion is being de- cided by Judge Ward by agreement of both judges.

ey allegedly owed to Meridien by GOL and LTC. In response to Meridien's complaint, defendants filed an answer and counterclaims. In addition to numerous affirmative defenses, defendants presented counterclaims, many of which sound in fraud, alleging that agreements between Meridien and GOL and LTC "were unconscionable and grossly contrary to the interests of the people and Government of Liberia and LTC." Amended Answer and Counterclaims of Defendants at Counterclaim ¶ 9 ("Am. Ans. & Counter.").

## I. The Parties

The three parties in this case are: (1) plaintiff, Meridien; (2) defendant, GOL; and (3) defendant, LTC. In addition to the parties, many persons are identified who are employed by these parties, leaders of these parties, or involved with these parties in some capacity. At this point, the Court will briefly describe the main participants in this case.

Meridien is a foreign banking corporation organized and existing under the laws of the Bahamas with its principal place of business in Nassau, Bahamas. It is a merchant bank and bank holding company which is involved in commercial lending, merchant banking transactions, and other related activity. Meridien has maintained an office, senior personnel, and bank accounts in the City and State of New York. Defendants allege that a substantial portion of plaintiff's business is transacted from New York, and on information and belief that Meridien's principal place of business from 1985 to 1987 was New York City. *Id.* at ¶¶ 3, 65.E(a). Meridien Bank of Liberia ("MBLL") has held itself out as a subsidiary of Meridien organized as a bank under the laws of Liberia.

GOL is a foreign government and LTC is a foreign corporation organized and existing under the laws of Liberia. LTC was created by legislation enacted by the Senate and House of Representatives of the Republic of Liberia and approved on or about February 22, 1973. LTC is the national telecommunications company of Liberia and is engaged in, among other things, the development of telecommunications services and the establishment of telecommunications stations in Liberia. GOL wholly owns and controls LTC and its management.

Spar Aerospace Limited ("Spar") is a Canadian aerospace corporation. The agreements entered into by the parties were made in connection with the sale and installation of a telecommunications earth station in Liberia by Spar.

The following are some of the persons integral to the agreements of the parties. Samuel K. Doe ("President Doe" or "Doe") was the then-president of Liberia. Keith Wilson ("Wilson") was a member and fundraiser for the National Democratic Party of Liberia, which was the political party of former President Doe. Abraham Kollie ("Kollie"), for the time period relevant to this action, was a member of the Liberian Senate and had previously served as President Doe's Deputy Vice Head of State. S. Richlieu Watkins ("Watkins") was the managing director of LTC from 1986 through 1987. He signed the Credit Agreement, to which reference will be made shortly. In April 1987, Oscar J. Quiah ("Oscar Quiah") was appointed managing director of LTC. Roosevelt Quiah is Oscar Quiah's brother. Andrew Sardanis ("Sardanis") was the Chairman of Meridien's Board of Directors for the entire time period relevant to the counterclaims. Michael Wingate ("Wingate") was the Vice President of Meridien in the late 1980s.

## II. The Agreements

On September 12, 1986, LTC, Meridien, and MBLL, as the local agent for Meridien, entered into a Credit Agreement ("Credit Agreement"). Pursuant to this agreement, Meridien loaned LTC $18,870,000, with the purpose of the loan being to finance the construction by Spar of a satellite telecommunications earth station in Liberia. The Credit Agreement was amended on April 25, 1989, extending the payment schedule.

GOL and Meridien entered into an Unconditional Guaranty Agreement on or about September 30, 1986 ("Guaranty"). GOL guaranteed the due and punctual payment of the principal and interest of the loans made to LTC by Meridien.

On March 5, 1990, a loan agreement ("Loan Agreement") was entered into between Meridien and GOL for the total principal of $8 million of which $3 million was applied as a partial payment on the loan for the telecommunications project. Meridien and GOL entered into an additional Unconditional Guaranty Agreement on March 9, 1990.

### III. The Complaint

Meridien commenced this action to recover damages for alleged breaches of the Credit Agreement and Guaranty by filing a Verified Complaint in the Supreme Court of the State of New York on July 17, 1992. It claims that LTC made payments of interest to Meridien under the Credit Agreement and its notes in the sum of $3,787,441 and that $3,000,000 of the proceeds of an $8,000,000 loan from Meridien to GOL was applied against the accrued interest of the Credit Agreement. Meridien, however, alleges that no payment has been made since July, 1990, despite due demand, and in violation of the Credit Agreement and the notes.

Pursuant to Section 6.2 of the Credit Agreement, Meridien duly declared the loan in default, accelerated the loan, and declared immediately due and owing the entire unpaid principal, interest, and other amounts due under the Credit Agreement. Additionally, Meridien has demanded payment from GOL as the guarantor.

### IV. Defendants' Amended Answer and Counterclaims

On November 8, 1995, GOL and LTC filed an answer to the complaint, and by agreement of the parties, filed an Amended Answer and Counterclaims on November 24, 1995. The Amended Answer and Counterclaims consisted of Eight Affirmative Defenses and Fourteen Counterclaims. Defendants are primarily alleging that through bribery and corruption, directed at high level government and LTC officials, onerous terms were imposed and inflated prices were charged in the Credit Agreement, Guaranty, and related transactions from 1985 to at least 1990 in connection with the sale and installation of the telecommunications earth station by Spar in Liberia. Through the Counterclaims, defendants are arguing that these agreements and the bribery that took place to induce their terms defrauded GOL, LTC, and the people of Liberia.

Defendants claim that, in addition to other persons, Meridien paid bribes to Doe and Watkins in order to procure the above mentioned agreements. Because of the alleged actions, defendants' put forth the following counterclaims:

(1) Rescission of the Credit Agreement;

(2) Rescission of the Guaranty;

(3) Common law fraud;

(4) Civil conspiracy;

(5) Breach of contract;

(6) Tortious interference with the fiduciary duties of GOL;

(7) Tortious interference with the fiduciary duties of LTC;

(8) Aiding and abetting in the commission of a tort by Meridien giving substantial assistance and encouragement to Doe, Kollie, and Watkins to violate their fiduciary duties and that as a proximate result of this assistance and encouragement, Meridien is responsible for the harm to GOL and LTC as a result of the tortious conduct of these individuals;

(9) Wrongful attachment of GOL's property in New York which is presumptively immune from attachment and execution under Section 1609 of the Foreign Sovereign Immunities Act, 28 U.S.C. § 1609; [2]

(10) Violation of Section 2 of the Clayton Act as amended by the Robinson–Patman Act, 15 U.S.C. § 13(c), as Meridien engaged in interstate and foreign commerce and that in the course of such commerce, agreed to and did pay bribes to Doe, Kollie, Watkins, Roosevelt Quiah, and others in order to obtain the Credit Agreement and Guaranties and to prevent their cancellation;

---

**2.** This is the only counterclaim that Meridien is not challenging in this motion to dismiss. As such, this Court will not comment further on Counterclaim Nine.

(11) Violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c);

(12) Violation of RICO § 1962(a);

(13) Violation of RICO § 1962(d); and

(14) Liability by Meridien for Spar's fraud and bribery if upon adjudication the Court finds the Credit Agreement and Guaranty are binding and enforceable.

## V. Procedural History

As noted above, Meridien commenced this action with the filing of a Verified Complaint in the Supreme Court of the State of New York on July 17, 1992. The case was removed by defendants to this Court on September 28, 1992 pursuant to 28 U.S.C. § 1441(d). On November 8, 1995 GOL and LTC filed their Answer to the Complaint and Counterclaims, and by agreement of the parties, on November 24, 1995 defendants filed an Amended Answer and Counterclaims.

The instant motion, filed with the Court on October 9, 1997, seeks the dismissal of thirteen of the fourteen counterclaims.

## DISCUSSION

### I. Standard for Motion to Dismiss

■ The motion to dismiss the counterclaims was brought pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Rule 12(b)(1) provides that a counterclaim will be dismissed for "lack of jurisdiction over the subject matter" and Rule 12(b)(6) provides for the dismissal of a counterclaim for "failure to state a claim upon which relief can be granted." F.R.C.P. 12(b)(1) & (6). In deciding such a motion, the Court must accept all well-pleaded facts as true and construe the answer and counterclaims in the light most favorable to the nonmoving party. *See Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1092 (2d Cir. 1995). A motion to dismiss under Rule 12 must be denied "unless it appears beyond doubt that the [defendant] can prove no set of facts in support of his claim which would entitle him to relief." *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974) (quoting *Conley v. Gibson*, 355 U.S.

41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)); *see also Morales v. New York State Dep't of Corrections*, 842 F.2d 27, 30 (2d Cir.1988).

■ Much of plaintiff's motion to dismiss is based on statute of limitations defenses to the counterclaims.[3] "While a statute of limitations defense may be raised in a motion to dismiss ... such a motion should not be granted unless it appears beyond doubt that the [defendants] can prove no set of facts in support of [their] claim which would entitle [them] to relief." *Ortiz v. Cornetta*, 867 F.2d 146, 148 (2d Cir.1989) (quoting *Abdul–Alim Amin v. Universal Life Ins. Co.*, 706 F.2d 638, 640 (5th Cir.1983) (internal quotations omitted)); *see also Egelston v. State University College*, 535 F.2d 752, 754 (2d Cir.1976); *Banco De Desarrollo Agropecuario v. Gibbs*, 709 F.Supp. 1302, 1309–10 (S.D.N.Y.1989).

### II. Tolling the Statute of Limitations Because Bribery and Fraud Were Used to Conceal the Misconduct

Meridien argues that all of defendants' counterclaims, with the exception of Counterclaim Nine, are time barred. This Court will examine each counterclaim to determine the appropriate statute of limitations period and any individual tolling of those statutes. First, however, the Court will review defendants' arguments that all relevant statutes of limitations should be tolled from 1986 to 1990.

Defendants claim that the equitable tolling doctrines of fraudulent concealment, adverse domination, and equitable estoppel require the tolling of the statutes of limitations for all of their counterclaims. GOL and LTC argue that November 22, 1990, which is the date a new government, the Interim Government of National Unity, took over Liberia, is the earliest date from which the new officials would be able to discover the evidence of Meridien's wrongdoings. Therefore, defendants claim that based on the doctrines of equitable tolling, all counterclaims should be tolled from 1986 until November 22, 1990.

■ As this Court discusses below, some of these counterclaims arise under state statutes and common law while others are based in federal law. Since statutes of limitations

---

**3.** This Court finds that the counterclaims sounding in fraud were pled with particularity and therefore denies the motion to dismiss on that ground.

have substantive effects on cases, as opposed to being purely procedural, the Court must apply state statutes of limitations to the counterclaims based on state law and federal limitation periods, where available, for those arising under federal law. As the doctrines of equitable tolling would affect the relevant statutes of limitations, state law of equitable tolling should govern the state claims and federal law of equitable tolling should govern the federal claims. Upon review of these doctrines, however, this Court finds that while the definitions may vary slightly, the end result of applying the state and federal doctrines of equitable tolling of fraudulent concealment, adverse domination, and equitable estoppel, are the same in this case. For this reason, the discussion in this Opinion of equitable tolling rarely parses them out.

█ The doctrine of equitable tolling allows a claim to be filed outside of the applicable limitations period where some action on the plaintiff's part made it such that the defendants were unaware that the cause of action existed. *See Long v. Frank*, 22 F.3d 54, 58 (2d Cir.1994), *cert. denied*, 513 U.S. 1128, 115 S.Ct. 938, 130 L.Ed.2d 883 (1995). This doctrine " 'was developed in the context of actions based on fraud,' but 'has been applied in cases alleging causes of action other than fraud where the facts show that the [plaintiff] engaged in conduct, often itself fraudulent, that concealed from the [defendants] the existence of the cause of action.' " *Id.* (quoting *Cerbone v. International Ladies' Garment Workers' Union*, 768 F.2d 45, 48 (2d Cir.1985)). In such an instance, the statute of limitations would not begin to run until the defendants acquired actual knowledge or should have acquired actual knowledge through the exercise of reasonable diligence after being apprised of sufficient facts to be put on notice. *See Cerbone*, 768 F.2d at 48; *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 461 (2d Cir.1974).

## A. Fraudulent Concealment

█ The doctrine of fraudulent concealment was designed to prevent a party from "concealing a fraud, or ... committing a fraud in a manner that it concealed itself until such time as the party committing the fraud could plead the statute of limitations to protect it." *New York v. Hendrickson Brothers, Inc.*, 840 F.2d 1065, 1083 (2d Cir.), *cert. denied*, 488 U.S. 848, 109 S.Ct. 128, 102 L.Ed.2d 101 (1988) (holding that fraudulent concealment was sufficiently proven at trial regarding a Clayton Act violation) (quoting *Bailey v. Glover*, 88 U.S. (21 Wall.) 342, 349, 22 L.Ed. 636 (1874)). In describing the elements of this equitable doctrine, the Supreme Court stated that:

> when there has been no negligence or laches on the part of a plaintiff in coming to the knowledge of the fraud which is the foundation of the suit, and when the fraud has been concealed, or is of such character as to conceal itself, the statute does not begin to run until the fraud is discovered by, or becomes known to, the party suing, or those in privity with him.

*Hendrickson Bros.*, 840 F.2d at 1083 (quoting *Bailey*, 88 U.S. (21 Wall.) at 349–50).

█ In order to establish fraudulent concealment, defendants must show that: (1) Meridien concealed the existence of the cause of action; (2) defendants remained ignorant of the cause of action until some point within four years of the commencement of their counterclaims; and (3) defendants' ignorance was not attributable to a lack of diligence on the part of defendants. *See Hendrickson Bros.*, 840 F.2d at 1083; *Grinnell Corp.*, 495 F.2d at 460; *Camotex, S.R.L. v. Hunt*, 751 F.Supp. 469, 470–71 (S.D.N.Y.1990). Fraudulent concealment occurs where plaintiff either "took affirmative steps to prevent the [defendants'] discovery of [their] claim" or "the wrong itself was of such a nature as to be self-concealing." *Hendrickson Bros.*, 840 F.2d at 1083 (holding that Clayton Act claim was tolled because of fraudulent concealment); *see also Camotex*, 751 F.Supp. at 470 (holding that fraudulent concealment tolled statute of limitations on federal antitrust claim).[4]

---

4. Under New York State law, cases referencing fraudulent concealment rely on the same analysis as that provided for under equitable estoppel. In fact, cases regarding fraudulent concealment as a tolling principle point to the same cases as those which discuss the doctrine of equitable estoppel. *See e.g., Rizk v. Cohen*, 73 N.Y.2d 98, 102, 538 N.Y.S.2d 229, 535 N.E.2d 282 (1989); *Florio v. Cook*, 48 N.Y.2d 792, 793, 423 N.Y.S.2d 917, 399 N.E.2d 947 (1979). As the two princi-

■ Defendants allege that Meridien's bribery of the agents of GOL and LTC amounts to fraudulent concealment. Included in these bribery allegations are $2 million to President Doe, $2 million to Wilson, $2 million to Watkins, and $500,000 to the Quiah brothers by plaintiff. Through this bribery, Meridien gained otherwise unacceptable terms in the Credit Agreement and Guaranty. The bribery allowed Meridien to conceal the cause of action from the public and others in a potential position to act. Since the top officials of GOL and LTC were involved, the ignorance was not attributable to a lack of diligence by defendants, but instead was attributable to Meridien's actions.

As this is a motion to dismiss counterclaims, the Court reviews defendants' pleadings in the light most favorable to the defendants. While this Court does not go so far as to find that fraudulent concealment in fact existed, it does find that defendants' pleadings sufficiently allege fraudulent concealment and therefore the statutes of limitations are tolled from 1986 to November 22, 1990.

## B. Equitable Estoppel

■ Equitable estoppel is another doctrine which tolls the statute of limitations when a party claiming to benefit from the statute carries on in such a way as to lull the other party into delay or misrepresent the situation in such a manner that equity requires tolling of the statute. Courts have granted equitable estoppel as a defense to statute of limitations claims in numerous situations. "Under New York Law, 'a [plaintiff] may be estopped to plead the Statute of Limitations where [defendants were] induced by fraud, misrepresentation or deception to refrain from filing a timely action.'" *Schupak v. Florescue*, 92 Civ. 1189(JFK), 1993 WL 256572, at *5 (S.D.N.Y. July 8, 1993) (quoting *Simcuski v. Saeli*, 44 N.Y.2d 442, 448–49, 406 N.Y.S.2d 259, 377 N.E.2d 713 (1978)). For example, equitable estoppel is granted where "affirmative fraudulent statements are made which conceal from the [defendant] facts essential to make out the cause of action." *Renz v. Beeman*, 589 F.2d 735, 750 (2d Cir.1978), *cert. denied*, 444 U.S. 834,

100 S.Ct. 65, 62 L.Ed.2d 43 (1979) (citing *Simcuski*, 44 N.Y.2d at 448–49, 406 N.Y.S.2d 259, 377 N.E.2d 713; *General Stencils, Inc. v. Chiappa*, 18 N.Y.2d 125, 128, 272 N.Y.S.2d 337, 219 N.E.2d 169 (1966); *Erbe v. Lincoln Rochester Trust Co.*, 13 A.D.2d 211, 214 N.Y.S.2d 849 (4th Dept.1961); *Dodds v. McColgan*, 229 A.D. 273, 241 N.Y.S. 584 (1st Dept.1930)).

■ For the federal law claims, defendants can invoke equitable estoppel by showing that: "(1) the [plaintiff] made a definite misrepresentation of fact, and had reason to believe that the [defendants] would rely on it; and (2) the [defendant] reasonably relied on that misrepresentation to his detriment." *Buttry v. General Signal Corp.*, 68 F.3d 1488, 1493 (2d Cir.1995) (citing *Heckler v. Community Health Services*, 467 U.S. 51, 59, 104 S.Ct. 2218, 81 L.Ed.2d 42 (1984)). This Court finds that for reasons similar to those stated above, equitable estoppel tolls the statute of limitations for the federal claims as well.

■ As discussed above, *see supra* § II.A., and below, *see infra* II.C., defendants claim that the domination and control of GOL and LTC by persons involved in misconduct with Meridien, created the concealment of facts essential to the counterclaims. Defendants have pled concealment and domination sufficiently to avoid dismissal of the counterclaims at this point. Until the issues of domination and control, which are fact based, are more fully litigated, the statute of limitations must be deemed not to have expired.

## C. Adverse Domination

■ Adverse domination permits the statute of limitations on a claim to be tolled "where an action is brought on behalf of an entity which has been defrauded by persons who completely dominated and controlled it." *Armstrong v. McAlpin*, 699 F.2d 79, 87 (2d Cir.1983); *see also IIT, An Int'l Inv. Trust v. Cornfeld*, 619 F.2d 909, 930 (2d Cir.1980); *International Railways of Cent. Am. v. United Fruit Co.*, 373 F.2d 408, 414 (2d Cir.)

ples have the same interpretation under New York law, this Court will not dismiss the state claims based on the doctrine of equitable estop-

pel, discussed *infra* II.B. Equitable Estoppel, which encompasses fraudulent concealment.

*cert. denied,* 387 U.S. 921, 87 S.Ct. 2031, 18 L.Ed.2d 975 (1967); *Moviecolor Ltd. v. Eastman Kodak Co.,* 288 F.2d 80, 88 (2d Cir.), *cert. denied,* 368 U.S. 821, 82 S.Ct. 39, 7 L.Ed.2d 26 (1961); *Michelsen v. Penney,* 135 F.2d 409, 415–16 (2d Cir.1943); *Banco De Desarrollo Agropecuario,* 709 F.Supp. at 1310. Under such circumstances, "the statute is tolled as to the controlling wrongdoers during the period of their domination and control." *Armstrong,* 699 F.2d at 87 (citations omitted).

▮▮▮ Defendants allege that the bribery of high officials of both GOL and LTC occurred. As stated previously, the bribery allegations include $2 million to President Doe, $2 million to Wilson, $2 million to Watkins, and $500,000 to the Quiah brothers. As the persons bribed by plaintiff include the then-President of Liberia and the Managing Directors of LTC, plaintiff as a third party effectively dominated and controlled LTC and GOL. Defendants have pled to the satisfaction of this Court that the persons who completely dominated and controlled GOL and LTC defrauded such entities.[5] Further, defendants' pleadings indicate that they are prepared to present evidence of "full, complete and exclusive control in the directors or officers charged." *International Railways,* 373 F.2d at 414 (quotations omitted). It cannot be expected that the officers of GOL and LTC or plaintiff, who were involved in the alleged corrupt behavior, would bring this behavior to the attention of the courts. Therefore, the statute of limitations must be tolled during their period of control.

## D. Conclusion With Regard to Equitable Tolling

Accordingly, at this stage of the litigation, equitable tolling doctrines toll the statutes of limitations for the thirteen counterclaims at issue, from 1986 to November 22, 1990.

## III. Timeliness of Defendants' Counterclaims

▮▮▮ In a case brought in a federal district court pursuant to 28 U.S.C. § 1441(d), such as this case, state law governs the tolling of the statute of limitations for the state claims presented to the federal court. *See e.g., Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). While the Federal Rules of Civil Procedure do address counterclaims as well as when they can and should be filed, they do not address how to determine if the counterclaims are timely. *See* F.R.C.P. 13. As such, the tolling of the statutes of limitations for counterclaims is also governed by state law.

Section 203(d) of New York Civil Practice Law and Rules ("N.Y.C.P.L.R.") provides that "[a] defense or counterclaim is not barred if it was not barred at the time the claims asserted in the complaint were interposed."[6]

▮▮▮ In determining the tolling date for the state counterclaims in this action, the Court looks to when the action was filed. This case was filed on July 17, 1992 in New York State Court. Defendants, on September 28, 1992 removed the action to federal court. The relevant tolling date, however, for the state claims is the date the action was initially filed in the state court, July 17, 1992. *See Aaron Ferer & Sons Limited v. Chase Manhattan Bank, Nat'l Assoc.,* 731 F.2d 112, 122 (2d Cir.1984) (filing in state court is the relevant date for reviewing statute of limitations defenses in removed case).

Therefore, to determine if the counterclaims are time-barred, the Court looks to

---

**5.** Plaintiff contends that " 'the doctrine is inapplicable in an action other than one against a person 'dominating' the corporation,' even if the action is brought against a third-party that allegedly bribed the corporation's officers." Plaintiff/Counterclaim–Defendant's Reply Memorandum of Law in Support of Motion to Dismiss the Amended Counterclaims at 4 (quoting *Sousa v. BP Oil,* 83 Civ 4046(DPW), 1995 WL 842003, at *9 (D.Mass. September 12, 1995), *aff'd in part and dismissed in part by,* 98 F.3d 1357, 1996 WL 514889 (Fed.Cir.1996) (dismissal related to other

issues)). The Court finds no support for plaintiff's assertion, even in light of *Sousa.* The court in *Sousa* did not hold that a third party could not be found to adversely dominate a corporation, rather it held that "passive complicity" was not enough for a court to find adverse domination. *See Sousa,* 1995 WL 842003, at *9–10.

**6.** N.Y.C.P.L.R. § 203(d) was formerly § 203(c), before a 1992 amendment redesignated the subdivision as § 203(d).

either New York State law or Federal law, depending on the law upon which the counterclaim is based, to ascertain the limitation period and the Court then determines if this time expired by computing the length of time from the alleged event to when the statute was tolled (i.e. the filing in New York Supreme Court). Again, while the Court is reviewing each counterclaim's statute of limitation, all are tolled from 1986 to November 22, 1990.

## A. Counterclaims One through Five and Fourteen are Timely

Plaintiffs concede that the statutes of limitations for counterclaims One through Five and Fourteen are six years. As they acknowledge that all of the pertinent events could have occurred in September 1986, they are all timely. First, September 1986 is within six years of July 17, 1992 and second, as the statutes of limitations for these claims were tolled until November 1990, July 17, 1992 is clearly within six years of November 1990.

 Counterclaims One and Two seek recission of the Credit Agreement and Guaranty based upon Meridien's alleged fraud in procuring those contracts. *See* Am. Ans. & Counter. at Counter. ¶¶ 21–26. As these counterclaims are based upon fraud, the statute of limitations is governed by N.Y.C.P.L.R. § 213 which provides that the: "action[ ] must be commenced within six years: ... [when the action is] based upon fraud; the time within which the action must be commenced shall be computed from the time the plaintiff or the person under whom he claims discovered the fraud, or could with reasonable diligence have discovered it." As plaintiffs indicate, the Credit Agreement and Guaranty were executed in September 1986 and therefore the "alleged fraud ... occurred prior to or during September 1986." *See* Plaintiff/Counterclaim–Defendant's Memorandum of Law in Support of Motion to Dismiss the Amended Counterclaims at 5 ("Pl. Mem. in Support of Mot."). Plaintiffs thereby essentially concede that the alleged fraud occurred within six years of the date of the filing of the complaint. These counterclaims are therefore timely without even considering the equitable tolling doctrines.

Counterclaim Three alleges common law fraud and as such the statute of limitations is again governed by N.Y.C.P.L.R. § 213. Plaintiffs acknowledge that the bribes and misrepresentations alleged by defendants could have occurred up until September 1986. As N.Y.C.P.L.R. § 213 provides for a six-year period of limitations, this counterclaim is similarly timely regardless of the equitable tolling discussed above.

 Defendants' fourth counterclaim, one of civil conspiracy, alleges that Meridien conspired with Keith Wilson, MBLL, Liberian Senator Abraham Kollie and others in order to achieve unlawful objectives and/or achieve lawful objectives by unlawful, tortious, or improper means. Counterclaim Four alleges that plaintiff and the co-conspirators conspired and agreed to (1) obtain contracts related to the earth station by means of bribery, fraud, misrepresentation, suppression of material facts, and other unlawful, tortious and improper methods; (2) conceal their misdeeds; (3) interfere with the fiduciary duties owed by Samuel Doe and other government and LTC officials to the Republic, LTC, and the people of Liberia; (4) obtain the Credit and Guaranty Agreements on terms unreasonably favorable to plaintiff; and (5) deprive defendants of their property through fraud, conversion, and other illegal, tortious, and improper means. *See* Am. Ans. & Counter. at Counter. ¶ 32. They also allege numerous overt acts committed by plaintiff and co-conspirators in furtherance of the conspiracy, including: (1) bribing President Doe and other government officials to ensure that the Republic and LTC signed the Credit Agreement and Unconditional Guaranty Agreement; (2) negotiating and entering into the Credit Agreement and Unconditional Guaranty Agreement under false pretenses; (3) arranging for Doe, Kollie, and other official to violate their fiduciary duties to GOL, LTC, and the people of Liberia; and (4) paying bribes to Roosevelt Quiah to prevent the legal termination of the Credit Agreement and Unconditional Guaranty based on the earlier fraud and bribery. *Id.* at ¶ 33.

 When applying the statute of limitations, the Court must "look to the essence of

[the] claim." *Korry v. International Telephone & Telegraph Corp.,* 444 F.Supp. 193, 195 (S.D.N.Y.1978); *see also Schlotthauer v. Sanders,* 153 A.D.2d 731, 545 N.Y.S.2d 197, 199 (2nd Dept.1989), *appeal denied,* 75 N.Y.2d 709, 555 N.Y.S.2d 691, 554 N.E.2d 1279 (1990) (civil conspiracy is not an independent action and is therefore time-barred when the underlying action is time-barred). Here, as plaintiff acknowledges, the civil conspiracy claim sounds in fraud. *See* Pl. Mem. in Support of Mot. at 6. As such, N.Y.C.P.L.R. § 213 governs and a six-year statute of limitations is applied which is to "be computed from the time the cause of action accrued."[7] *See* N.Y.C.P.L.R. § 203(a). As these overt acts are alleged to have occurred on or before September 1986, Counterclaim Four is also timely regardless of the equitable tolling.

■ GOL and LTC, in Counterclaim Five, assert breach of contract, alleging that if the Credit Agreement was binding and enforceable, Meridien breached its obligation under the Credit Agreement by failing to credit LTC and GOL properly for payments made under the agreement and by fraudulently invoicing to obtain funds not due under the agreement. Am. Ans. & Counter. at Counter. ¶¶ 36–37. N.Y.C.P.L.R. § 213 provides that actions arising upon a contractual obligation must commence within six years of the alleged breach. As plaintiff indicates, the alleged breach would have occurred between September 1986, when the Credit Agreement was executed, and July 1990, when LTC last made payment under the contract. Pl. Mem. in Sup. of Mot. at 7. The entire period that plaintiff points to as the relevant time period falls within the six-year statute of limitations and therefore this counterclaim is timely. Further, as the statute of limitations, for the purposes of this motion to dismiss, was tolled from 1986 to November 1990, Counterclaim Five clearly falls within the limitations period.

In Counterclaim Fourteen, GOL and LTC assert a claim against Meridien resulting from Spar's alleged fraud and bribery. Defendants allege that as a result of bribes to LTC and GOL, LTC and Spar entered into a

Construction Contract on or about April 25, 1986 and the Republic of Liberia agreed to guarantee the repayment of loans needed to finance the transaction. *See* Am. Ans. & Counter. at Counter. ¶¶ 81–85. GOL and LTC claim that plaintiff knowingly benefitted from and participated in the fraud by entering into the Credit Agreement with LTC by which plaintiff financed Spar's fraudulently obtained construction contract and the bribes paid to obtain it and the Unconditional Guaranties by which plaintiff ensured that it would be repaid despite the fraudulent nature of the transaction. *Id.* at ¶ 87. Additionally, defendants allege that in or about May 1988 plaintiff conspired with Spar by bribing or attempting to bribe Roosevelt Quiah to cause him to influence his brother, LTC's Managing Director Oscar Quiah, not to cancel the construction contract or Credit Agreement. *Id.* at ¶ 88. As this counterclaim sounds in fraud, the appropriate limitations period is six-years. *See* N.Y.C.P.L.R. § 213. Therefore, any events occurring after July 17, 1986 are not time-barred even without regard to the doctrines of equitable tolling.

### B. Counterclaims Six through Eight are Timely

■ The Republic, in Counterclaim Six, alleges tortious interference by plaintiff with the fiduciary duties owed by then-President Samuel K. Doe, Senator Abraham Kollie, and other government officials to the Republic and people of Liberia. Am. Ans. & Counter. at Counter. ¶ 39. In Counterclaim Seven, LTC alleges tortious interference by plaintiff with the fiduciary duties owed by S. Richlieu Watkins, Oscar Quiah, and other LTC officials to LTC and its shareholder, the Republic. *Id.* at ¶¶ 45–46. Both counterclaims allege that plaintiff knowingly and intentionally interfered with the fiduciary duties these officials owed to LTC and the Republic by taking actions such as bribing the officials to ensure that they would place their personal interests ahead of their fiduciary obligations. Most of these bribes were allegedly paid prior to the parties entering into the Credit

---

7. Plaintiff also concedes in its papers to the Court that a six-year statute of limitations applies to this civil conspiracy counterclaim. *See* Pl. Mem. in Support of Mot. at 6.

Agreement and Guaranty which occurred in September 1986, with the exception of Roosevelt and Oscar Quiah who were allegedly paid sums of money in October 1991.

While tortious interference with fiduciary duties is a recognized cause of action in New York State, neither New York's Civil Practice Law and Rules nor case law regarding tortious interference with fiduciary duties, clearly enunciate what limitation period is applicable. *See, e.g.,* N.Y.C.P.L.R. § 213(2) & commentary and § 214(4) & commentary (McKinney 1990). The parties disagree on the statute of limitations, with defendants claiming that a six-year limitation period is applicable and plaintiff claiming that three years is the applicable limitation period.

Defendants argue that "[a] cause of action for tortious interference with fiduciary duty through bribery sounds in fraud because bribery is a form of fraud," and they therefore argue that a six-year statute of limitations applies. *See* Defendants/Counterclaimants' Memorandum of Law in Opposition to Motion to Dismiss Amended Counterclaims at 4 ("Def. Mem. in Opp. to Mot."). The case which defendants use as support for their position, *United States v. Dixon,* 536 F.2d 1388 (2d Cir.1976), is inapposite. First, *Dixon* contains no discussion of any statute of limitations. Second, the portion of *Dixon* on which defendants rely is an appeal of a criminal conviction under mail fraud statutes. Finally, *Dixon* does not support the proposition that tortious interference with fiduciary duties through bribery sounds in fraud. Defendants, therefore, have provided no reasonable argument as to why this Court should adopt a six-year statute of limitations for tortious interference with fiduciary duties.

This Court finds that a three-year statute of limitations applies for two reasons. First, as with a breach of fiduciary duties claim, when the relief sought is legal in nature a three-year limitation period applies. Second, while a contractual relationship existed between the parties, tortious interference with fiduciary duties clearly relies on tort doctrine, and therefore, it follows that a three-year statute of limitations should apply.

█ In *Philip Morris, Inc. v. Heinrich,* Judge McKenna, of this Court, held that the statute of limitations for a claim of breach of fiduciary duties is dependent on the nature of the substantive relief sought. 1996 WL 363156, at *16 (S.D.N.Y. June 28, 1996) (citing *Ghandour v. Shearson Lehman Bros. Inc.,* 213 A.D.2d 304, 624 N.Y.S.2d 390, 392 (1st Dept.1995)). A three-year statute of limitations is applied when the only damages sought are legal and a six-year statute of limitations is applied when equitable relief is sought. *Philip Morris,* 1996 WL 363156, at *16; *see also Geren v. Quantum Chemical Corp.,* 832 F.Supp. 728, 735 (S.D.N.Y.1993) (quoting *Loengard v. Santa Fe Industries, Inc.* 70 N.Y.2d 262, 519 N.Y.S.2d 801, 803, 514 N.E.2d 113 (1987)). While *Philip Morris* is distinguishable from the case at bar, as the claim in *Philip Morris* is one of a *breach* of fiduciary duties whereas here LTC and Republic are asserting *tortious interference* with fiduciary duties as the counterclaims, the rationale applied is the same. Following *Philip Morris,* this Court finds that defendants are seeking only legal damages, in the forms of compensatory and punitive damages *see* Am. Ans. & Counter. at Counter. ¶¶ 43, 49, and therefore a three-year statute of limitations should apply.

█ Secondly, the Court finds that these counterclaims are tortious in nature and therefore a three-year statute of limitations applies. Even if the underlying claims are based in contract, tortious interference still commands a three-year statute of limitations. In *Norris v. Grosvenor Marketing Limited,* a three-year statute of limitations was applied to a claim that defendants tortiously interfered with a third party's performance of his contractual obligations to the plaintiffs. 803 F.2d 1281, 1284, 1287 (2d Cir.1986) (citing N.Y.C.P.L.R. § 214(4)), *aff'd in part and remanded in part,* 803 F.2d 1281 (affirming statute of limitations issues). Tortious interference with contractual obligations alleged as a defendant intentionally inducing a third party to breach a contract is also subject to a three-year limitations period. *See Solow v. Stone,* 994 F.Supp. 173, 181–82 (S.D.N.Y. 1998) (citing *Vanderminden v. Vanderminden,* 226 A.D.2d 1037, 1043, 641 N.Y.S.2d 732; N.Y.C.P.L.R. § 214(4) (McKinney 1990)). Therefore, when the tortious interference involves a breach of contract, courts apply the

New York Civil Practice Law and Rules to afford a three-year limitations period.

The same holds true where it is tortious interference with fiduciary duties. In *Fireman's Fund Ins. Co. v. Fraund*, the Court held that while the "suit is founded on an alleged breach of contract," the claim for inducement to breach fiduciary duties was governed by a three-year limitations period. 88 Civ. 2765(MBM), 1989 WL 31490 at *2, *9 (S.D.N.Y. March 31, 1989).[8] LTC and Republic's tortious interference claims allege that plaintiff induced various persons to breach their fiduciary duties. Similarly, in *Fireman's Fund*, plaintiffs alleged that one of the defendants induced another defendant to breach its fiduciary duty owed to plaintiff. 1989 WL 31490, at *1–2. While in *Fireman's Fund* contractual relationships existed amongst the parties, the claim of inducement to breach fiduciary duties clearly relied on tort doctrine and therefore it follows that a three-year statute of limitations applied. This is analogous to the case at bar and as such the Court applies a three-year statute of limitations to Counterclaims Six and Seven.

In this case, a six-year statute of limitations applies to the common law fraud and contractual counterclaims that defendants have alleged. To additionally recover tort damages on counterclaims which clearly arise out of tortious conduct and request legal remedies, however, defendants must have asserted these counterclaims within the three-year limitations period.

 In Counterclaims Six and Seven, the statute of limitations began to run when the fiduciary duties were breached. *See e.g., Norris v. Grosvenor Marketing Limited*, 803 F.2d at 1287 (the statute begins to run for the tortious interference claim from the date of the induced breach of contract). The signing of the Credit Agreement and Unconditional Guaranty Agreement in September 1986, and the Quiah brothers bribery in September 1991, are what defendants claim as the breaches of fiduciary duty. Thus, Counterclaims Six and Seven with regard to all other officials but Oscar Quiah, would be time-barred but for the equitable tolling of the statute of limitations. As the statute of limitations was tolled from 1986 until November 22, 1990, and the filing of the complaint was July 17, 1992, the three-year period has not expired. Counterclaims Six and Seven, therefore, are not time-barred.

 Defendants' Counterclaim Eight alleges that Meridien aided and abetted in the commission of a tort by substantially assisting and encouraging Doe, Kollie, Watkins, and others to engage in tortious conduct that injured the Republic and LTC. While asserting that the aiding and abetting is for tortious conduct, defendants only claim tortious conduct based on well-pleaded facts with regard to breach of fiduciary duties.[9] Therefore, this Court must determine the proper statute of limitations for aiding and abetting a breach of fiduciary duty.

 As stated above in *Philip Morris*, a three-year statute of limitations applies to a breach of fiduciary duties claim where legal remedies are sought and a six-year statute of limitations applies where equitable remedies are sought. *Philip Morris*, 1996 WL 363156, at *16; *see also Geren v. Quantum Chemical Corp.*, 832 F.Supp. 728, 735 (S.D.N.Y.1993) (quoting *Loengard v. Santa Fe Industries, Inc.* 70 N.Y.2d 262, 519 N.Y.S.2d 801, 803, 514 N.E.2d 113 (1987)). Defendants contend that the statute of limitations for Counterclaim Eight should be six years under CPLR § 213(1) as equitable relief is sought. *See* Def. Mem. in Opp. to Mot. at 5. Upon review of Counterclaim Eight in Defendants' Amended Answer and Counterclaims, the

---

8. In addition, the claims of tortious interference with a contract and breach of fiduciary duty were held to have three-year statutes of limitations. 1989 WL 31490 at *9.

9. In stating a claim for aiding and abetting a breach of fiduciary duties, the defendants must show:

 (1) the existence of a violation of fiduciary duty by the primary (in this case, a violation of fiduciary duties by LTC and the Republic);

 (2) "knowledge of this violation on the part of the aider and abettor" (in this case, knowledge by Meridien); and

 (3) "substantial assistance by the aider and abettor in the achievement of the primary violation."

 *IIT, an International Investment Trust v. Cornfeld*, 619 F.2d 909, 922 (2d Cir.1980) (citations and internal quotations omitted); *see Geren v. Quantum Chemical Corp.*, 832 F.Supp. 728, 737 (S.D.N.Y.1993).

Court finds no request for equitable relief. In this counterclaim, defendants solely request compensatory and punitive damages. *See* Am. Ans. & Counter. at Counter. ¶¶ 50–53.[10] Accordingly, like Counterclaims Six and Seven, Counterclaim Eight is barred but for the equitable tolling.

 Further, if the Court later finds that equitable tolling does not apply to Counterclaims Six and Seven, Counterclaim Eight asserting aiding and abetting a breach of fiduciary duties would fail to state a claim. "Where the primary violation is barred by the applicable statute of limitations, a claim for aiding and abetting this primary violation fails to state a claim." *Geren v. Quantum Chemical Corp.*, 832 F.Supp. at 737–38 (citing *Wood v. Wood*, 312 F.Supp. 762, 763 (S.D.N.Y.1970)).

### C. Counterclaim Ten is Not Timely

 In Counterclaim Ten,[11] defendants allege a claim for commercial bribery under Section 2(c) of the Clayton Act as amended by the Robinson–Patman Act, 15 U.S.C. § 13(c).[12] Both plaintiff and defendants recognize that the applicable statute of limitations is four years. *See* 15 U.S.C. § 15b ("Any action to enforce any cause of action under section 15, 15a, or 15c of this title shall be forever barred unless commenced within four years after the cause of action accrued.").

 The parties, however, dispute when the statute of limitations began running. Since this is a federal counterclaim under the Clayton and Robinson–Patman Acts, New York CPLR § 203 does not apply. As noted above, the applicable federal statute makes it clear that an action under 15 U.S.C. § 15 must be commenced "within four years after the cause of action accrued." *See* 15 U.S.C. § 15b; *see also Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 91 S.Ct. 795, 28 L.Ed.2d 77 (defendant counterclaimed under the Sherman and Clayton Acts, with 15 U.S.C. § 15b governing the statute of limitations, and it was found that the four years began when the claim accrued). Generally, the cause of action accrues and the statute of limitations begins to run when plaintiff commits an act that injures the defendants' business. *See Zenith Radio Corp.*, 401 U.S. at 338, 91 S.Ct. 795. Here, the alleged acts of bribery occurred in 1986, 1988, and 1991.

Moreover, there is no tolling of the statute of limitations at the time the complaint is filed. Defendants are not seeking recoupment as they seek punitive damages, and therefore, the statute of limitations continues to run until the counterclaims are filed. The last bribes that defendants allege were wire transfers on October 14, 1991. Defendants' original answer was filed on November 6, 1995. All of plaintiff's acts that allegedly injured LTC and GOL occurred prior to November 6, 1991 and are therefore barred by the statute of limitations. Even accepting the equitable tolling which defendants requested, the four-year limitation period has expired.

 Further, in the context of a continuing conspiracy to violate the antitrust laws, the statute of limitations is read to mean that each time defendants are injured by an act committed by plaintiff a cause of action accrues for recovery of damages caused by that act. *See id.* The statute of limitations runs from each act and none occurred within the four year limitation period. Counterclaim Ten is, therefore, dismissed.

---

**10.** Equitable relief may be sought when the legal remedy is inadequate. Defendants, however, do not seek equitable relief in their Counterclaims. Their claims for compensatory damages and punitive damages are legal in nature. Defendants at no point argue that because of fraudulent actions by the plaintiffs, legal remedies would prove inadequate. Therefore, this Court views this claim in light of the requested legal remedies.

**11.** Counterclaims Ten through Fourteen raise federal claims. When Congress fails to provide a statute of limitations for a federal cause of action, the federal court must "borrow" the limitation provision from the state statute most analogous. *See Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350, 355, 111 S.Ct. 2773, 115 L.Ed.2d 321 (1991); *Wilson v. Garcia*, 471 U.S. 261, 266–67, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985). Borrowing, however, is not necessary in this case as the federal statutes raised in Counterclaims Ten through Fourteen all provide limitations periods.

**12.** Suits for recovery by the person injured under the antitrust laws are governed by 15 U.S.C. § 15.

### D. Counterclaims Eleven through Thirteen Are Not Timely

In Counterclaims Eleven, Twelve, and Thirteen, GOL and LTC allege violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961, 1962(a), (c), and (d) ("RICO"). A four-year statute of limitations applies to all civil RICO actions regardless of the predicate act involved. *Agency Holding Corp. v. Malley–Duff & Associates, Inc.* 483 U.S. 143, 156, 107 S.Ct. 2759, 97 L.Ed.2d 121 (1987); *Bankers Trust Co. v. Rhoades,* 859 F.2d 1096, 1101 (2d Cir.1988), *cert. denied,* 490 U.S. 1007, 109 S.Ct. 1643, 104 L.Ed.2d 158 (1989). As for when the cause of action accrues, the Second Circuit has held:

> that each time a plaintiff suffers an injury caused by a violation of 18 U.S.C. § 1962, a cause of action to recover damages based on that injury accrues to plaintiff at the time he discovered or should have discovered the injury.

*Bankers Trust,* 859 F.2d at 1102.

Since these counterclaims are based on federal causes of action, the date from which to measure the statute of limitations is the date the answer and counterclaims were filed, November 6, 1995.[13] While the filing of the complaint does not toll the statute of limitations for civil RICO claims, each cause of action under the civil RICO statutes need not have necessarily occurred within the four years prior to November 6, 1995. The Second Circuit is quite explicit in stating that the accrual date is not when the injury occurred but when the party claiming a RICO violation discovered or should have discovered the injury. *See id.* Further, not only does the claim not accrue until the injury is discovered or reasonably should have been discovered, accrual does not begin until GOL and LTC were aware that the cause of the injury was from the racketeering events. *See 131 Main Street Assocs. v. Manko,* 897 F.Supp. 1507, 1514 (S.D.N.Y.1995); *Dayton Monetary Assocs. v. Donaldson, Lufkin & Jenrette Sec. Corp.,* 1992 WL 204374, at *3–6 (S.D.N.Y. August 11, 1992).

Defendants themselves contend, however, that after the ousting of the Doe regime in November 1990, defendants *could* have begun to discover the RICO violations. The Court has accorded defendants this tolling period of the statute of limitations. Nevertheless, Counterclaims Eleven, Twelve, and Thirteen are still time barred as they were not filed until November 6, 1995, more than four years from the date these causes of action accrued. Therefore, Counterclaims Eleven through Thirteen are dismissed.

### CONCLUSION

For the foregoing reasons, plaintiff's motion to dismiss Counterclaims Ten through Thirteen is granted without prejudice to defendants making a further showing of equitable tolling consistent with this Opinion and denied with respect to Counterclaims One through Eight and Fourteen.

It is so ordered.

---

**13.** As in Counterclaim Ten, since recoupment is not what is being sought, these Counterclaims were not tolled at the time of the filing of the complaint.